**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------x
JULIE SOMERSET,                              )
individually and on behalf of                )
all others similarly situated,               )
                                             )          No. 17-CV-7539 (ADS)(ARL)
                    Plaintiff,               )
                                             )
         - against -                         )
                                             )
STEPHEN EINSTEIN &                           )
ASSOCIATES, P.C. and                         )
STEPHEN EINSTEIN,                            )
                                             )
                    Defendants.              )
-------------------------------------------------x


**Plaintiff's Memorandum in Opposition to**
**Defendants' Motion to Dismiss Complaint**


Respectfully Submitted,

Attorneys for Plaintiff
Joseph Mauro
The Law Office of Joseph Mauro, LLC
306 McCall Ave
West Islip, NY 11795
(631) 669-0921

Brian L. Bromberg
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, NY 10004
(212) 248-7906

**Table of Contents**

Table of Authorities ............................................................................................................ ii

Introduction ....................................................................................................................... 1

Argument ........................................................................................................................... 2

   I.   Standard ................................................................................................................. 2

   II.   The Fair Debt Collection Practices Act ................................................................ 2

      A.   The least sophisticated consumer test ........................................................... 2

      B.   As a remedial statute, the FDPCA must be broadly read for the protection of
consumers ............................................................................................................. 2

   III.   Plaintiff Has Standing ........................................................................................... 3

   IV.   Defendant Engaged in Materially Deceptive Conduct .......................................... 4

      A.   There is no materiality requirement for claims under 15 U.S.C. § 1692e(11) .............. 4

      B.   Defendant is furthering a massive fraud on New York consumers .............................. 6

      C.   Defendants misrepresented themselves as authorized to issue a subpoena ................... 7

      D.   Plaintiff alleges Defendants violated 15 U.S.C. § 1692e(3) ..................................... 9

   V.   The Initial Communication Was the Income Execution and It Violated The FDCPA..... 12

      A.   Income execution was the initial communication .......................................... 12

      A.   Every communication must state whether it is from a debt collector ................... 12

      A.   Defendants' cases are non-binding and distinguishable ................................. 15

   VI. 15 U.S.C. § 1692e(11) Applies to The Income Execution ................................... 18

      A.   The Income Execution was a communication ............................................... 18

      B.   The Income Execution was not a formal pleading.......................................... 21

      C. There are no other exceptions to 15 U.S.C. § 1692e(11) ................................. 23

   VII. The Claims Based on Service of Process Are Not Time Barred ......................... 24

   VIII. Claims Under 15 U.S.C. § 1692e and 15 U.S.C. § 1692f Are Not Mutually Exclusive . 25

Conclusion ........................................................................................................................ 25

Certificate of Service ........................................................................................................ 26

**Table of Authorities**

**Page(s)**

**Cases**

*Adams v. Schumacher*,
  2014 U.S. Dist. LEXIS 170075 (D. Or. Dec. 9, 2014) ....................................................21, 22

*Andrus v. Glover Constr. Co.*,
  446 U.S. 608 (U.S. 1980) .................................................................................................23

*Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*,
  875 F.3d 128 (2d Cir. 2017) ..................................................................2, 19, 20, 25

*Balke v. All. One Receivables Mgmt.*,
  No. 16-cv-5624(ADS)(AKT), 2017 U.S. Dist. LEXIS 94021 (E.D.N.Y. June
  19, 2017) ...............................................................................................................1, 3

*Bam Bam Entm't LLC v. Pagnotta*,
  ___ N.Y.S.3d ___, 2018 NY Slip Op 28109 (Sup. Ct., Kings County Apr. 11,
  2018) ....................................................................................................................11

*Barrows v. Chase Manhattan Mortg. Corp.*,
  465 F. Supp. 2d 347 (D.N.J. 2006) .................................................................15, 16

*Benzemann v. Citibank N.A.*,
  806 F.3d 98 (2d Cir. 2015) ..............................................................................24, 25

*Bernal v. NRA Grp., LLC*,
  318 F.R.D. 64 (N.D. Ill. 2016) ..............................................................................3

*Carlin v. Davidson Fink LLP*,
  852 F.3d 207 (2d Cir. 2017) ..................................................................................24

*Castro v. Green Tree Servicing LLC*,
  959 F. Supp. 2d 698 (S.D.N.Y. 2013) ...................................................................13

*Ceban v. Capital Mgmt. Servs., L.P.*,
  No. 17-CV-4554 (ARR) (CLP), 2018 U.S. Dist. LEXIS 7389 (E.D.N.Y. Jan.
  17, 2018) ...............................................................................................................3

*Chase Bank USA, N.A. v. Cardello*,
  27 Misc. 3d 791, 896 N.Y.S.2d 856 (Richmond Co. Civ. Ct. 2010) ......................8

*Church v. Fin. Recovery Servs.*,
No. 16-CV-6391-FPG, 2018 U.S. Dist. LEXIS 44540 (W.D.N.Y. Mar. 19,
2018) ..................................................................................................................3

*Costa v. Nat'l Action Fin. Servs.*,
634 F. Supp. 2d 1069 (E.D. Cal. 2007)..........................................................16

*Davis v. Hollins Law*,
832 F.3d 962 (9th Cir. 2016) ...........................................................................15

*Delmoral v. Credit Prot. Ass'n, LP*,
No. 13-CV-242 (RRM) (SMG), 2015 U.S. Dist. LEXIS 133760 (E.D.N.Y.
Sep. 30, 2015) ....................................................................................................5

*Demarais v. Gurstel Chargo, P.A.*,
869 F.3d 685 (8th Cir. 2017) .............................................................................3

*Easterling v. Collecto, Inc.*,
692 F.3d 229 (2d Cir. 2012)...............................................................................2

*Edwards v. Niagara Credit Sols., Inc.*,
584 F.3d 1350 (11th Cir. 2009) .......................................................................12

*Elias v. Rolling Stone LLC*,
872 F.3d 97 (2d. Cir. 2017)................................................................................2

*Ellis v. Gen. Revenue Corp.*,
274 F.R.D. 53 (D. Conn. 2011) ........................................................................25

*ERA Realty Co. v. RBS Properties*,
185 A.D.2d 871, 586 N.Y.S.2d 831 (2d Dep't 1992) ........................................11

*Eun Joo Lee v. Forster & Garbus LLP*,
926 F. Supp. 2d 482 (E.D.N.Y. 2013) .............................................................6, 8

*Foti v. NCO Financial Systems*,
424 F. Supp. 2d. 655 (S.D.N.Y. 2006) ...........................................................2, 13

*Fuentes v. AR Res., Inc.*,
Civil Action No. 15-7988 (FLW)(LHG), 2017 U.S. Dist. LEXIS 48923
(D.N.J. Mar. 31, 2017)........................................................................................3

*Gil v. Allied Interstate, LLC*,
No. 2:17-cv-3362 (ADS)(AYS), 2017 U.S. Dist. LEXIS 182824 (E.D.N.Y.
Nov. 3, 2017) ....................................................................................................25

*Goldman v. Cohen*,
445 F.3d 152 (2d Cir. N.Y. 2006)................................................................18, 20

iii

*Gustafson v. Alloyd Co.*,
   513 U.S. 561, 115 S. Ct. 1061 (1995) ..................................................................21

*Hallstrom v. Tillamook County*,
   844 F.2d 598 (9th Cir. 1987) ...............................................................................6

*Hauk v. LVNV Funding, LLC*,
   749 F. Supp. 2d 358 (D. Md. 2010) .....................................................................22

*Heintz v. Jenkins*,
   514 U.S. 291 (U.S. 1995) ..............................................................................20, 21

*Hemmingsen v. Messerli & Kramer, P.A.*,
   674 F.3d 814 (8th Cir. 2012) .............................................................................19

*Heyer v. Pierce & Assocs., P.C.*,
   No. 14 C 854, 2017 U.S. Dist. LEXIS 3144 (N.D. Ill. Jan. 9, 2017)....................22

*Ignatowski v. GC Servs.*,
   3 F. Supp. 2d 187 (D. Conn. 1998) .....................................................................15

*Janetos v. Fulton Friedman & Gullace, LLP*,
   825 F.3d 317 (7th Cir. 2016) ...........................................................................5, 8

*Kagan v. Selene Fin. L.P.*,
   210 F. Supp. 3d 535 (S.D.N.Y. 2016) .......................................................4, 13, 14

*Mark v. J. C. Christensen & Assoc., Inc.*,
   09cv100, 2009 WL 2407700 (D. Minn. Aug. 4, 2009) ........................................5

*Massey v. On-Site Manager, Inc.*,
   285 F.R.D. 239 (E.D.N.Y. 2012) .........................................................................4

*Mayfield v. Asta Funding, Inc.*,
   95 F. Supp. 3d 685 (S.D.N.Y. 2015) ...................................................................19

*McCrobie v. Palisades Acquisition XVI, LLC*,
   664 Fed. Appx. 81 (2d Cir. 2016).......................................................................25

*Miller v. Wolpoff & Abramson, L.L.P.*,
   321 F.3d 292 (2d Cir. 2003)...........................................................................5, 9

*Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*,
   277 F. Supp. 3d 337 (E.D.N.Y. 2017) ..................................................................3

*Musah v. Houslanger & Assocs., PLLC*,
   962 F. Supp. 2d 636 (S.D.N.Y. 2013) ..................................................................9

*Nara v. Palisades Acquisition XVI, LLC*,
   No. CV 14-4687 (JS)(ARL), 2015 U.S. Dist. LEXIS 89024 (E.D.N.Y. May
   11, 2015) ............................................................................................................20, 23, 24

*Papetti v. Does 1-25*,
   691 Fed. Appx. 24 (2d Cir. 2017) ........................................................................3

*Pipiles v. Credit Bureau of Lockport, Inc.*,
   886 F.2d 22 (2d Cir. 1989) .......................................................................... *passim*

*Plummer v. Atl. Credit & Fin., Inc.*,
   66 F. Supp. 3d 484 (S.D.N.Y. 2014) .....................................................................3

*Price-Richardson v. DCN Holdings, Inc.*,
   No. MJG-17-2038, 2018 U.S. Dist. LEXIS 24747 (D. Md. Feb. 14, 2018)............................4

*Puglisi v. Debt Recovery Sols., LLC*,
   No. 08-CV-5024 (JFB) (WDW), 2010 U.S. Dist. LEXIS 6120 (E.D.N.Y. Jan.
   26, 2010) ............................................................................................................25

*Reed v. Glob. Acceptance Credit Co.*,
   No. C-08-01826 RMW, 2008 U.S. Dist. LEXIS 61738 (N.D. Cal. Aug. 11,
   2008) ..................................................................................................................16

*Rice v. Grimm Bros. Realty Co.*,
   2016 U.S. Dist. LEXIS 7502 (E.D. Pa. Jan. 21, 2016) .........................................22

*Romea v. Heiberger & Assocs.*,
   163 F.3d 111 (2d Cir. 1998)................................................................................20

*Roth v. Solomon & Solomon, P.C.*,
   No. 17-CV-0868(JS)(AKT), 2018 U.S. Dist. LEXIS 18649 (E.D.N.Y. Feb. 5,
   2018) ....................................................................................................................3

*Setton v. Cohen Hurkin Ehrenfeld Pomerantz & Tenenbum, LLP*,
   2014 U.S. Dist. LEXIS 133772 (E.D.N.Y. Sept. 22, 2014)...................................18

*Shanker v. Fair Collection & Outsourcing, LLC*,
   Civil Action No. 3:09-cv-1759 (FLW), 2009 U.S. Dist. LEXIS 52213 (D.N.J.
   June 19, 2009).....................................................................................................17

*Simon v. FIA Card Services, N.A.*,
   732 F.3d 259 (3d Cir. 2013)..........................................................................18, 21

*Smith v. Greystone All. LLC*,
   2011 U.S. Dist. LEXIS 35283 (N.D. Ill. Mar. 29, 2011).........................................5

*Sussman v. I.C. Sys.*,
    928 F. Supp. 2d 784 (S.D.N.Y. 2013) ....................................................................4

*Sykes v. Mel Harris & Assocs., LLC ("Sykes I")*,
    757 F. Supp. 2d 413 (S.D.N.Y. 2010) ................................................................20

*Sykes v. Mel Harris & Assocs. LLC ("Sykes II")*,
    285 F.R.D. 279 (S.D.N.Y. 2012), *aff'd* 780 F.3d 70 (2d Cir. 2015)................................10, 11

*Sykes v. Mel Harris & Assocs., LLC ("Sykes III")*,
    2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May 24, 2016)............................. *passim*

*Villari v. Performance Capital Mgmt.*,
    1998 U.S. Dist. LEXIS 11128 (S.D.N.Y. July 21, 1998) .......................................2

*Vincent v. Money Store*,
    736 F.3d 88 (2d Cir. 2013).................................................................................2

*Wallace v. Wash. Mut. Bank, F.A.*,
    683 F.3d 323 (6th Cir. 2012) ...........................................................................5

*Warren v. Sessoms & Rogers, P.A.*,
    676 F.3d 365 (4th Cir. 2012) ...........................................................................5

*Wright v. Phillips & Cohen Assocs.*,
    2014 U.S. Dist. LEXIS 126804 (E.D.N.Y. Sep. 9, 2014)....................................18

## Statutes

Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. 1692, *et seq.* ................................ *passim*

## Other Authorities

BLACK'S LAW DICTIONARY (10th ed. 2014) ...........................................................................22

**Introduction**

The Plaintiff filed this action alleging that the Defendants violated the Fair Debt
Collection Practices Act (FDCPA), 15 U.S.C. 1692, *et seq.*, by sending her an Income Execution
attempting to enforce a default judgment entered against her 12 years earlier. Plaintiff has
alleged that the law firm that secured the default judgment for the judgment creditor was Mel S.
Harris and Associates (Mel Harris). Plaintiff has alleged that the process-service company that
Mel Harris used to allegedly serve the Plaintiff with the summons and complaint in the state
court action was SamServ. The Plaintiff has moved in the state court to vacate this default
judgment. Plaintiff alleges that Mel Harris and SamServ regularly engaged in "sewer service."
The business practices of Mel Harris and SamServ were responsible for New York State having
to vacate over 200,000 default judgments, with a face value of over $1 billion. *Sykes v. Mel
Harris & Assocs., LLC ("Sykes III")*, 2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May 24, 2016).
Plaintiff has alleged that the Defendants were aware of the business practices of Mel Harris and
Samserv, but chose to attempt to enforce the default judgement against the Plaintiff anyhow.
Plaintiff has alleged that the attempt to enforce this improper judgment, as well as the content of
the income execution, violated multiple sections of the FDCPA. Defendants have moved to
dismiss the Plaintiff's Complaint, relying partially on the factual assertions of Defendants'
counsel. In this motion under Fed. R. Civ. P. 12(b)(6), the Court should not rely upon defense
counsel's factual assertions. The Plaintiff has moved to Amend the Complaint. (Docket Entry
#14). The Court should consider the allegations in the amended complaint while deciding this
motion. *See Balke v. All. One Receivables Mgmt.*, No. 16-cv-5624(ADS)(AKT), 2017 U.S. Dist.
LEXIS 94021, at *5-6 (E.D.N.Y. June 19, 2017)

1

**Argument**

## I.  Standard

At the motion to dismiss juncture of the litigation, all Plaintiff need do is state a claim that is "plausible on its face," after the court has accepted all factual allegations as true and has drawn all reasonable inferences in her favor. *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d. Cir. 2017), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff has done so.

## II.  The Fair Debt Collection Practices Act

### A.  The least sophisticated consumer test

Whether a communication could be deemed false or deceptive is analyzed from the objective standard of the least sophisticated consumer. *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017). This standard "pays no attention to the circumstances of the particular debtor in question." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012). "[T]he operative inquiry is whether the hypothetical least sophisticated consumer could reasonably interpret" the communication in a way that is not accurate. *Id.*

### B.  As a remedial statute, the FDPCA must be broadly read for the protection of consumers

The FDCPA is a remedial consumer-protection statute that must be liberally construed to protect consumers. *Arias*, 875 F.3d at 137; *Vincent v. Money Store*, 736 F.3d 88, 98 (2d Cir. 2013); *see also Foti v. NCO Financial Systems,* 424 F. Supp. 2d 655 (S.D.N.Y. 2006), quoting *Blair v. Sherman Acquisition*, No. 04 Civ 4718, 2004 WL 2870080 at 2 (N.D. Ill. Dec.13, 2004 ("[b]ecause it is designed to protect consumers, the FDCPA is, in general, liberally construed in favor of consumers to effect its purpose."); *Villari v. Performance Capital Mgmt.*, 1998 U.S. Dist. LEXIS 11128, 5-6 (S.D.N.Y. July 21, 1998) ("The FDCPA is remedial in nature and should

2

be liberally construed. *Pipiles v. Credit Bureau of Lockport, Inc*., 886 F.2d 22, 27 (2d Cir. 1989));

and *Plummer v. Atl. Credit & Fin., Inc*., 66 F. Supp. 3d 484 (S.D.N.Y. 2014).

### III. Plaintiff Has Standing

The Second Circuit has concluded that consumers have standing to sue for statutory

violations of 15 U.S.C. § 1692e and 15 U.S.C. § 1692g based solely on a violation of those

provisions. *Papetti v. Does 1-25*, 691 Fed. Appx. 24, 25-26 (2d Cir. 2017) (summary order). The

violation of the statute constitutes the "actual injury" necessary for standing. District Courts

within the Second Circuit have universally followed *Papetti. See*, *Balke*, 2017 U.S. Dist. LEXIS

94021, at *5-6 (compiling cases); *Church v. Fin. Recovery Servs.*, No. 16-CV-6391-FPG, 2018

U.S. Dist. LEXIS 44540, at *7-9 (W.D.N.Y. Mar. 19, 2018); *Roth v. Solomon & Solomon, P.C.*,

No. 17-CV-0868(JS)(AKT), 2018 U.S. Dist. LEXIS 18649, at *8-9 (E.D.N.Y. Feb. 5, 2018);

*Ceban v. Capital Mgmt. Servs., L.P.*, No. 17-CV-4554 (ARR) (CLP), 2018 U.S. Dist. LEXIS

7389, at *9 (E.D.N.Y. Jan. 17, 2018). Courts inside and outside of the Second Circuit have also

held that Plaintiffs have standing to assert claims under 15 U.S.C. § 1692f based solely on a

violation of that provision. *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, 277 F. Supp. 3d

337, 345 (E.D.N.Y. 2017); *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 691-92 (8th Cir.

2017); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72-73 (N.D. Ill. 2016); *Fuentes v. AR Res., Inc.*,

Civil Action No. 15-7988 (FLW)(LHG), 2017 U.S. Dist. LEXIS 48923, at *13 (D.N.J. Mar. 31,

2017) ("Accordingly, this Court joins the "overwhelming majority of courts" that have

determined that FDCPA violations under §§ 1692e and 1692f give rise to concrete, substantive

injuries sufficient to establish Article III standing.")

## IV. Defendant Engaged in Materially Deceptive Conduct

Section 1692e(11) of the FDCPA does not contain a materiality requirement. In any

event, however, the alleged conduct of Defendants was materially deceptive.

### A. There is no materiality requirement for claims under 15 U.S.C. § 1692e(11)

Plaintiff has alleged that the Income Execution at issue failed to include the notice

required by 15 U.S.C. § 1692e(11). Congress specifically required that debt collectors identify

themselves as such in *every* communication with a consumer. There is no materiality

requirement under 15 U.S.C. § 1692e(11). It is a *per se* violation to fail to provide the notices

required under this subsection. In *Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239 (E.D.N.Y.

2012), the Court described this clearly:

> Defendant's reliance on cases applying a materiality requirement
> to FDCPA §1692e claims is misplaced. Those cases address the provisions
> of FDCPA §1692e that prohibit false representations. In other words, they address
> the anti-fraud provisions of FDCPA §1692e. Materiality is almost always a
> required element in proving a fraud. *See Hahn v. Triumph P'ships*, 557 F.3d 755,
> 757 (7th Cir. 2009) ("Materiality is an ordinary element of any federal claim
> based on a false or misleading statement."). But FDCPA § 1692e also contains
> other provisions that do not require a showing of materiality. For
> example, FDCPA§1692e(11) mandates that debt collectors disclose in the initial
> communication with a consumer that they are attempting to collect a debt. The
> failure to give the required disclosure is actionable *per se*, without any
> requirement of materiality.

*Id.* at 247-48.

Congress specifically required the disclosures under 15 U.S.C. § 1692e(11). Congress has

already determined that these disclosures were material. The only question is whether the

Defendant provided the required notices. Also see: *Sussman v. I.C. Sys.*, 928 F. Supp. 2d 784,

796-97 (S.D.N.Y. 2013) (dismissing all Plaintiff's claims as immaterial, except the claim under

15 U.S.C. § 1692e(11)); *Kagan v. Selene Fin. L.P.*, 210 F. Supp. 3d 535, 548 (S.D.N.Y. 2016);

*Price-Richardson v. DCN Holdings, Inc.*, No. MJG-17-2038, 2018 U.S. Dist. LEXIS 24747, at

*14-15 (D. Md. Feb. 14, 2018); *Delmoral v. Credit Prot. Ass'n, LP*, No. 13-CV-242 (RRM)

(SMG), 2015 U.S. Dist. LEXIS 133760, at *21-23 (E.D.N.Y. Sep. 30, 2015);   *Smith v.*

*Greystone All. LLC*, 2011 U.S. Dist. LEXIS 35283, (N.D. Ill. Mar. 29, 2011) ("If a debt collector

fails to adequately disclose that it is a debt collector, the [c]ourt cannot see how that omission is

anything but material to the question of whether an unsophisticated consumer would be confused

about whether the caller was a debt collector."). In *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d

365 (4th Cir. 2012), the Circuit addressed this exact issue, and determined that it is a per se

violation not to provide the mandated disclosure:

> Warren complains about conduct that involves a "failure to disclose" "that the
> communication," the February 2009 phone message, was "from a debt collector."
> The statute expressly prohibits this exact *omission* by requiring debt collectors to
> disclose their status in every communication with a consumer. Accordingly,
> whether a materiality requirement attaches to other violations of § 1692e has no
> impact on Warren's allegations that the defendants violated §
> 1692e(11). *Cf. Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 235-36 (4th Cir.
> 2007) (analyzing alleged § 1692e(11) violation with no discussion of
> materiality requirement). The district court thus erred in concluding that Warren
> failed to allege a violation of § 1692e(11).

*Id*. at 373-74.

The Fourth Circuit's analysis in *Warren* comports with the Second Circuit's clear

position that the FDCPA does not require any actual injury to constitute a violation. *See Miller v.*

*Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) ("The FDCPA provides for

liability for attempting to collect an unlawful debt . . . and permits the recovery of statutory

damages up to $1,000 in the absence of actual damages. Thus, courts have held that actual

damages are not required for standing under the FDCPA."). When Congress requires that an act

be performed, failure to comply is material. *See also Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d

323, 328 (6th Cir. 2012); *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 324 (7th

Cir. 2016); *Mark v. J. C. Christensen & Assoc., Inc.*, 09cv100, 2009 WL 2407700, *4 (D. Minn.

5

Aug. 4, 2009); *Eun Joo Lee v. Forster & Garbus LLP*, 926 F. Supp. 2d 482, 487-88 (E.D.N.Y. 2013). The decision by Congress to require the § 1692e(11) notice is of course completely understandable. Consumers should be advised as to whether the attorney who is trying to take their money is a "debt collector" because that status affords the consumer the protections of the FDCPA (including, but not limited to, the right to dispute the debt, demand verification, prevent third party disclosures, and to sue for violations of the Act).

Defendants are requesting that this Court add a materiality requirement to the notice provisions of 15 U.S.C. § 1692e(11). The Court should reject this invitation. Congress spoke clearly as to what they wanted, and the Defendants' request to alter that would amount to a "judicial amendment in abrogation of explicit, unconditional statutory language." *Hallstrom v. Tillamook County*, 844 F.2d 598, 600-01 (9th Cir. 1987).

In addition to the Plaintiff's claims under 15 U.S.C. § 1692e(11), the Plaintiff herein has alleged other material violations of the FDCPA.

**B. Defendant is furthering a massive fraud on New York consumers**

As alleged in the Plaintiff's Complaint, and proposed Amended Complaint, the Income Execution served on Plaintiff indicated that there was a valid judgement against the Plaintiff. The Plaintiff has alleged however that the Defendant knew, or should have known, that the Judgement against the Plaintiff was obtained in a fraudulent manner. The Defendant knew, that the judgement was obtained by the Mel Harris firm, and was alleged to have been served upon the Plaintiff by SamServ, Inc. Plaintiff has alleged that the Defendants knew that these were the same two entities responsible for New York State having to vacate over two hundred thousand default judgments. *Sykes III*, 2016 U.S. Dist. LEXIS 74566, at *15 and *36. Attempting to enforce default judgments obtained by the Mel Harris law firm, based upon affidavits of service

6

from the SamServ process serving outfit is unconscionable. Through their new acts, the

Defendants have apparently chosen to further the original fraud against Plaintiff by trying to

enforce the bogus judgment, thereby adopting the original actions of Mel Harris and SamServ.

The Defendant argues that the Plaintiff's specific judgment was not one of judgments

automatically vacated by New York state in the *Sykes* action. Defendant appears to be arguing

that this gave the Defendants the authority to enforce all other Mel Harris judgments,

notwithstanding the Defendants' knowledge that the Mel Harris and Samserv firms operated

fraudulently to obtain default judgements. This argument should be rejected. Whether New York

State automatically vacated Plaintiff's judgment already is not the point. The point is that the

Mel Harris and SamServ regularly engaged in actions that led to New York State having to

vacate over 200,000 default judgments. And Defendants knew this. Defendants were not

permitted to ignore these facts. Knowing the way that these firms obtained default judgments,

Defendants were on clear notice that the "judgment" against the Plaintiff herein was likely

improper, which it was. Defendants chose to ignore this risk and attempted to enforce the

"judgment" anyhow. What is further disturbing is that it appears from Page 19 of the

Defendants' Memo of Law that they are still vouching for the validity of this Mel Harris

"judgment," and may still intend to try to enforce such.

   **C. Defendants misrepresented themselves as authorized to issue a subpoena**

       From the perspective of the least sophisticated consumer who received the Income

Execution, it is unclear who Stephen Einstein & Associates and Stephen Einstein were. It is also

unclear what involvement they had to her situation. Plaintiff never had any business relationship

with Rushmore Recovery (the purported "judgement creditor"), so she had no idea who they

were either (presumably they are a debt buyer alleging they purchased the original debt).

7

Additionally, Plaintiff was never served with the state lawsuit, so she had no idea that there was a default judgment against her. It is under those conditions, that Plaintiff (the least sophisticated consumer) received the Income Execution, attempting to collect on a "judgment" from 12 years prior. Being aware that the "judgment" was obtained by Mel Harris and SamServ, and hence likely improper, the Defendants were not authorized or empowered to issue the income execution. Representing themselves as authorized to issue and income execution is false and deceptive and violates 15 U.S.C. §§ 1692e, -e(2), -e(5), and -e(10). A false representation about the authority to issue an income execution could easily confuse and mislead a consumer. It also makes it more difficult for a debtor to determine how to respond. Should the consumer just pay the debt even though she has no idea how this judgment occurred? Or is this a complete scam? *See Janetos*, 825 F.3d at 324. Is this attorney part of the Sheriff's Office? Is this attorney a "debt collector" affording the consumer the protections of the FDCPA?  The potential for fraud is very real and it is even more likely in a situation when the debt is a public record like a judgment. As the Honorable Philip S. Straniere noted: "dishonest debt collectors" could "search the court records, obtain the names of judgment debtors and send debtors a letter stating they have purchased the debt . . . and should make all payments to the third party." *Chase Bank USA, N.A. v. Cardello*, 27 Misc. 3d 791, 896 N.Y.S.2d 856, 857-58 (Richmond Co. Civ. Ct. 2010). From the least sophisticated consumer's perspective, it certainly is not clear who these Defendants were. She was not even aware of the judgment. The Defendants failure to include the notice that they are merely a debt collector as required by 15 U.S.C. § 1692e(11) furthers the least sophisticated consumer's confusion. Confusing communications that impede a consumer's ability to understand whether and how to resolve a potential debt are clearly material. *See Fritz*, 955 F. Supp. 2d at 170-171; *Eun Joo Lee*, 926 F. Supp. 2d at 487-88.

### D.  Plaintiff alleges Defendants violated 15 U.S.C. § 1692e(3)

Plaintiff alleges that the Income Execution to Plaintiff was robo-signed, without any

meaningful attorney review. As such, the implication that the form was sent by an attorney is

false and misleading, violating 1692e(3). *Miller*, 321 F.3d at 306-07; *Musah v. Houslanger &*

*Assocs., PLLC*, 962 F. Supp. 2d 636, 640-41 (S.D.N.Y. 2013)(applying 1692e(3) claims to

Income Executions); *Diaz v. Portfolio Recovery Assocs., LLC*), 2012 U.S. Dist. LEXIS 25802

(E.D.N.Y. Feb. 28, 2012) (applying 1692e(3) claims to state court complaints).

In the situation that existed with the Mel Harris law firm and the SamServ process server

outfit, the meaningful review of each file/judgment becomes even more important. Blindly

sending judgment enforcement documents on "judgments" that were originally obtained by a law

firm and process serving company that operated one of the largest frauds ever perpetrated on the

New York Courts is reckless. "Meaningful" attorney involvement in this situation required more

than just determining that the "judgment" was still officially "of record." The scrutiny should

have certainly included determining the reliability of the underlying documents that were used to

obtain the default judgments. *See Musah*, 962 F. Supp. 2d at 640-41. And a meaningful review

should of course have included determining whether the state court ever had jurisdiction (i.e. was

service proper). Any meaningful review would have uncovered that Mel S. Harris and SamServ

were responsible for this default judgment. That alone should have stopped any further action on

the judgment. Consider that at the time that the Defendants herein sent Plaintiff the Income

Execution, the Southern District of New York had already clearly described the "review process"

that was used by the Mel Harris firm to obtain default judgments:

> Fabacher uses the database and software programs to create "judgment packet[s]"
> that include an affidavit of merit and are ultimately used to obtain a default
> judgment in the debt collection action. (*Id*. at 103-07; *see, e.g.*, Jain Decl. Exs. C,
> D). The documents are generated using "templates" with an "open standard

format." (11/21/11 Fabacher Dep. at 107:12-23). The template functions like a "mail merge" or a "fixed document with fields" into which the software program "plugs" the relevant information. (*Id.* at 107:12-108:11). Fabacher produces the affidavits of merit for signature in batches of up to 50 at a time. (*Id.* at 159-60). He "quality check[s]" one affidavit in each batch and if it is accurate, he signs the remaining affidavits in the batch without reviewing them. (*Id.*). The quality check consists of ensuring that information printed on the affidavit matches the information stored in the Debt Master database. (*Id.* at 160-62). In any given week, Fabacher signs as many as 350 affidavits of merit. *See Id.* at 180. Hence, Fabacher signs hundreds of affidavits a week, purportedly based on personal knowledge, purporting to certify that the action has merit, without actually having reviewed any credit agreements, promissory notes, or underlying documents, and, indeed, without even reading what he was signing.

*Sykes v. Mel Harris & Assocs. LLC ("Sykes II")*, 285 F.R.D. 279, 285 (S.D.N.Y. 2012), *aff'd*

780 F.3d 70 (2d Cir. 2015), rehearing and rehearing *en banc* denied on Apr. 3, 2015. The Court

should note that **Mr. Fabacher signed the Affidavit of Merit in the state lawsuit related to the**

**Plaintiff herein. This alone should have prevented the Defendants from relying on the judgement.**

In *Sykes*, the Southern District also described the "process serving" operating of

SamServ:

Between January 2007 and January 2011, Samserv defendants performed service of process in 94,123 cases filed by Mel Harris in New York City Civil Court, 59,959 of which were filed on behalf of Leucadia defendants. (7/31/11 Egleson Decl. ¶¶ 2-4). Records maintained by defendants reveal hundreds of instances of the same process server executing service at two or more locations at the same time. (*Id.* ¶¶ 9-11, Ex. A). On 517 occasions, defendants Mosquera, Lamb, and Andino, alone, claimed to be have performed service in two or more places at the same time. (*Id.* ¶ 11, Ex. A). For example, Mosquera claimed to have performed service at four different locations at 1 p.m. on September 17, 2008. (*Id.* ¶ 10). Lamb claimed to have performed service at two different locations at 6:59 p.m. on November 28, 2007. (*Id.*). Andino claimed to have performed service at nine different locations at 4 p.m. on March 29, 2007. (*Id.*). There were also many other occasions where multiple services were purportedly made so close in time that it would have been impossible for the process server to travel from one location to the other as claimed. (*Id.* ¶¶ 13-23, Ex. B). These facts, together with the high number of default judgments obtained by defendants, provide substantial support for plaintiffs' assertion that defendants regularly engaged in sewer service.

*Sykes II*, 285 F.R.D. at 284. The process server who swore to the Affidavit of Service in the instant matter was David Mosquera, from SamServ. (The "Mosquera" referred to in the *Sykes* case appears to be Michael Mosquera. It is not clear if this is the same person or a relative.)

It appears clear that no "meaningful" attorney review took place. It appears clear that the Income Execution was merely robo-signed and served. The § 1692e(3) claim is even more evident in this instance in that, Defendants presented themselves as a law firm, while simultaneously secreting the fact that they were merely a debt collector. This is beyond confusing to the least sophisticated consumer. These Defendant debt collectors are attempting to trade off on the idea that Stephen Einstein is licensed to practice law, while in fact, no attorney has actually engaged in the practice of law. This violates 15 U.S.C. § 1692e(3).

**E. Defendant Violated 15 U.S.C. §§ 1692e, 1692(2), 1692e(5), and 1692e(10)**

As described in the Amended Complaint, the underlying judgment was improper, and is in the process of being vacated. While Plaintiff alleges, and it appears clear, that no process server ever actually went to the address indicated on the Affidavit of Service that formed the basis of the default judgment, it was in any event, the wrong address. The Plaintiff had moved out of the residence the process server described long before. As such, it appears clear that the judgment will be vacated. When vacated, the "judgement" will be void *ab initio*. It will be as if the judgment was never obtained. *ERA Realty Co. v. RBS Properties*, 185 A.D.2d 871, 872-73, 586 N.Y.S.2d 831, 832 (2d Dep't 1992). As explained in *Bam Bam Entm't LLC v. Pagnotta*, ___ N.Y.S.3d ___, 2018 NY Slip Op 28109, ¶ 4 (Sup. Ct., Kings County Apr. 11, 2018):

> For the avoidance of doubt, wrongful execution has long been recognized as a cause of action where the underlying debt was either discharged or was otherwise invalid. This is even the case if the debt appears valid at the time of the levy if later the debt is discharged or invalidated as the debt is deemed void *ab initio*. *See, e.g., Era Realty Co. V. RBS Properties*, 185 A.D.2d 871, 586 N.Y.S.2d 831

11

[2d Dept. 1992]. The rationale being that when a party levies on a debt, the party levying, levies at the risk that the debt is not a proper debt.

The underlying "judgement" here was obtained through fraud, and the Defendants knew – or certainly should have known – that. Threatening to garnish the Plaintiff's pay is clearly a false threat in that the Defendants' were not authorized to do so. This is a violation of 15 U.S.C. §§ 1692e, -e(2), -e(5), and -e(10).

**V.  The Initial Communication Was the Income Execution and It Violated The FDCPA**

**A.  Income execution was the initial communication**

Plaintiff has alleged that the first and only communication the Plaintiff ever received from the Defendants was the income execution. As such, Defendants' subpoena was required to include the full notices of 15 U.S.C. § 1692e(11) and 15 U.S.C. § 1692g(a). It did not. As such, it violated the FDCPA.

**A.  Every communication must state whether it is from a debt collector**

Additionally, as further detailed below, *every* communication between the debt collector and the consumer must indicate that the communication is from a debt collector. 15 U.S.C. § 1692e(11). *Pipiles*, 886 F.2d at 26-27. So, even if the income execution was *not* the first communication, it still violated 15 U.S.C. § 1692e(11). Plaintiff contests that there was a previous letter. But in any event, Plaintiff asserts that she never received such letter. She asserts that the Income Execution was the first communication she received from the Defendants. This fact further highlights why it is important that *every* communication contain the notification required under 15 U.S.C. § 1692e(11). *See Pipiles*, 886 F.2d at 26-27 ("By requiring disclosure in all communications, Congress has ensured that even if the first notice is not received by the consumer, as Pipiles claims occurred here, subsequent notices will nonetheless provide the consumer with the requisite disclosures."); *see also Edwards v. Niagara Credit Sols., Inc.*, 584

12

F.3d 1350, 1351 (11th Cir. 2009); *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 719 n.22 (S.D.N.Y. 2013)

Defendant cites to some non-binding case law that suggests that in certain circumstances where the consumer had been in consistent contact with the debt collector, the debt collector does not have to announce their debt collector status in subsequent communications. It appears the Defendants here are asking the Court to ignore the mandatory law outlined by the Second Circuit in *Pipiles*, and to create an exception to the clear statutory scheme of 15 U.S.C. § 1692e(11). The Court should reject the Defendant's invitation to create exceptions to the statute. As outlined in *Pipiles*, Congress was clear that debt collectors must state in <u>every</u> communication that they are a debt collector. The Second Circuit in *Pipiles* stated:

> First, in providing that "all communications" contain the required disclosures, Congress appears to have precluded the "balancing" suggested in *Pressley*. Were balancing undertaken, allowing certain communications to omit the disclosures, the clear and unambiguous language "*all* communications" would effectively be changed to "*some* communications." Second, it is apparent that the prescribed requirement can further the Congressional purpose in enacting the FDCPA in 1977, which was to prevent "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692 (1982).

*Pipiles*, at 26-27.

In *Kagan*, 210 F. Supp. 3d at 546, the Court rejected the Defendant's request to create an exception to 15 U.S.C. § 1692e(11), noting that the statute does not make it incumbent on consumers to draw connections between various communications. *See also Foti*, 424 F. Supp. 2d at 669 (compiling cases). The Court in *Kagan* noted:

> Here, the Voicemail Messages include Selene Finance's name and phone number but at no point identify the caller as a debt collector. (*See* Compl. ¶ 26.) Defendants nonetheless argue that "even the least sophisticated consumer was clearly informed, and would know, that Selene Finance was a debt collector," (Defs.' Mem. 10-11 (citing *Gabriele*, 503 F. App'x at 95)), based on the prior exchange of "extensive correspondence regarding Plaintiff's debt," where "each of Selene Finance's letters to Plaintiff disclosed that Selene Finance was a 'debt

13

collector,'" (*id.* at 10 (citing Compl. Exs. A-F)). However, not only have courts
rejected nearly identical arguments, *see, e.g., Winberry v. United Collection
Bureau, Inc.*, 697 F. Supp. 2d 1279, 1291 (M.D. Ala. 2010) (rejecting the
defendant's argument "that it complied with the requirement that its agents
identify themselves as debt collectors" because "the [plaintiffs] were aware of
who was calling" based on name recognition); *Drossin v. Nat'l Action Fin. Servs.,
Inc.*, 641 F. Supp. 2d 1314, 1319 (S.D. Fla. 2009) (rejecting the defendant's
argument "that based on prior communications, a consumer may have recognized
its name and known that it was a debt collector"); *Savage v. NIC, Inc.*, No. 08-
CV-1780, 2009 U.S. Dist. LEXIS 65071, 2009 WL 2259726, at *5-6 (D. Ariz.
July 28, 2009) (finding the defendant had not "satisfied the disclosure
requirement" where the caller identified himself by name only but "had disclosed
that he was a debt collector in prior communications"), but many have expressly
found that consumers should not be expected to draw connections between
separate communications, *see, e.g., Edwards*, 584 F.3d at 1351 ("The [FDCPA]
specifically requires that a debt collector disclose in *all* communications with a
debtor that the message is from a debt collector." (emphasis added) (citing 15
U.S.C. § 1692e(11))); *Pasquale v. Law Offices of Nelson & Kennard*, 940 F.
Supp. 2d 1151, 1158 (N.D. Cal. 2013) ("The plain language of [§ 1692e(11)]
requires a debt collector to identify himself as such in *all* subsequent
communication."); *Kimball v. Frederick J. Hanna & Assocs., P.C.*, No. 10-CV-
130, 2011 U.S. Dist. LEXIS 90839, 2011 WL 3610129, at *4 (D. Minn. Aug. 15,
2011) ("The language of § 1692e(11) explicitly requires that
in *each* communication after the initial communication there must be a disclosure
that the communication is from a debt collector." (emphasis added)); *Drossin*, 641
F. Supp. 2d at 1320 ("[T]he statutory language . . . requires the debt collector to
reveal its identity—it does not require the consumer to recall any previous
communications." (citing *Foti*, 424 F. Supp. 2d at 669)); *Savage*, 2009 U.S. Dist.
LEXIS 65071, 2009 WL 2259726, at *6 ("[P]resuming that [the] [p]laintiffs were
aware that [the] [d]efendant was a debt collector [based on identification as such
in prior communications] would be contrary to the objectives of the statute to
protect debtors, even the least sophisticated, from abusive or deceptive collection
practices." (citing 15 U.S.C. § 1692e)).

*Kagan*, 210 F. Supp. 3d at 546.

In the Defendants' Memorandum of Law, defense counsel asserts that the

Defendants sent the Plaintiff an initial letter in October of 2015, *one year and two months*

*before* Defendants sent Plaintiff the Income Execution. Defense counsel asserts that this

letter provided Plaintiff all notices to which she was entitled under 15 USC 1692e(11).

Even if such a letter was sent, and received, it clearly did not relieve the Defendants of

their continuing obligation to properly disclose their status under 15 USC 1692e(11).

### A. Defendants' cases are non-binding and distinguishable

In any event, the non-binding cases presented by Defendant are easily distinguishable

factually from the instant matter. In *Davis v. Hollins Law*, 832 F.3d 962, 967-68 (9th Cir. 2016)

the consumer and the debt collector had been engaged in ongoing settlement negotiations for a

two-week period right before the allegedly illegal communication. The debt collector then left a

message on the consumer's voice mail in which he identified himself as from "Hollins Law," but

did not disclose reiterate that he was a debt collector. The Court ruled that because of the

ongoing communications the message did not violate the FDCPA. The facts in the instant matter

are clearly different, in that the Plaintiff herein has never communicated with the Defendants.

Here, Plaintiff had no idea who Defendants are. Plaintiff had never communicated with

Defendant previously in any manner.

In *Ignatowski v. GC Servs.*, 3 F. Supp. 2d 187, 189-91 (D. Conn. 1998), the Defendant

faxed a letter to the consumer's attorney, at the consumer's request. The letter did not contain a

statement that the Defendant was a debt collector. This is clearly distinguishable from the instant

action as the Plaintiff in the instant matter had never communicated with Defendant before, and

the illegal communication in the instant matter was sent to Plaintiff, not Plaintiff's attorney.

In *Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 359-60 (D.N.J.

2006), the Court ruled that in a foreclosure action, where the foreclosure complaint clearly

identified the law firm as a debt collector, and where the Defendant law firm "clearly represents"

the mortgagee in the underlying foreclosure, the Defendant need not provide the e(11) notice in

subsequent communications which "directly relate" to the foreclosure. In the instant matter, the

Defendant did not represent the alleged creditor in the underlying lawsuit. The state court complaint does not reference the Defendants at all because they are not the attorney of record. And finally, the illegal communication in the instant matter cannot be said to "directly relate" to the state complaint in the same manner as did the communication in the *Barrows* matter. In *Barrows*, the allegedly illegal communication was a letter sent to the consumer within the same month (March 2005) as the foreclosure Complaint which properly included the e(11) notice. In the instant matter, the state lawsuit was filed 12 years before, the Plaintiff was never served with the Complaint, and the Plaintiff never received any previous communication from the Defendants. In any event, the District Court in *Barrows* seems to have created an exception to 15 U.S.C. § 1692e(11) which directly conflicts with the Second Circuit's holding in *Pipiles*.

In, *Reed v. Glob. Acceptance Credit Co.*, No. C-08-01826 RMW, 2008 U.S. Dist. LEXIS 61738, at *7-9 (N.D. Cal. Aug. 11, 2008), the Court held that based upon the prior communications between the parties (including the consumer writing to the debt collector) there was an issue of fact whether the name of the debt collection company left on a voice mail message, itself conveyed that the Defendant was a debt collector. In the instant matter, the Plaintiff had no prior communications with Defendants, and never wrote to Defendants.

In *Costa v. Nat'l Action Fin. Servs.*, 634 F. Supp. 2d 1069, 1075-77 (E.D. Cal. 2007), the Court held that the Defendant was liable under the FDCPA because they did not disclose that they were a debt collector in a telephone message. The District Court then noted in pure dicta that it would not be a good policy to force a debt collector to state that they are a debt collector when a consumer returns a message from the debt collector. The Court opined that if the debt collector left a message for a consumer in which they clearly disclosed that they were a debt collector and asked for a return call, it would not be good policy to make the debt collector say it

16

again when the consumer returns the call. While this dicta appears to disagree with the Second

Circuit in *Pipiles*, the facts in the instant matter are completely different. The Plaintiff herein did

not return any messages from Defendant. The Plaintiff herein received one communication from

the Defendants, and that communication did not contain the required notice.

In *Shanker v. Fair Collection & Outsourcing, LLC*, Civil Action No. 3:09-cv-1759

(FLW), 2009 U.S. Dist. LEXIS 52213, at *10-14 (D.N.J. June 19, 2009), the consumer had

spoken with the Defendant debt collector and requested that the debt collector send the consumer

a letter. The debt collector did so, and the communication indicated that it was from a "collector"

at "Fair, Collections & Outsourcing, LLC." The Court found that this was sufficient to satisfy 15

U.S.C. § 1692e(11). The facts of the instant matter of completely different. Here, Plaintiff never

spoke with Defendants and the communication did not provide the notice required by the statute.

None of the cases to which Defendant cites are even remotely like this case. And a couple

of them appear to conflict with Second Circuit law. In any event, Congress was clear when it

drafted 15 U.S.C. § 1692e(11): debt collectors must state their status in every communication.

The Second Circuit in *Pipiles*, explained the policy reasons behind this Congressional mandate.

Even if the Plaintiff *had* received the letter that defense counsel now asserts was sent to Plaintiff

in October 2015, over a year before the Income Execution, this would not have obviated

Defendants obligation to continue to provide the required notice.

Defendants here are sending out income executions trying to enforce "judgments"

obtained by a law firm and process serving outfit that were responsible for New York State

having to vacate over 200,000 default judgments. And from Plaintiff's perspective, she had never

heard of Defendants before. Nor had Plaintiff ever even heard of the debt buyer who appears as

the judgment creditor. It hardly seems unreasonable that Defendants provide the notices required

by 15 U.S.C. § 1692e(11). Indeed, Congress and the Second Circuit require them to do so.

## VI. 15 U.S.C. § 1692e(11) Applies to The Income Execution

### A. The Income Execution was a communication

The Income Execution is clearly a "communication" under the FDCPA. *See Goldman v.*

*Cohen*, 445 F.3d 152 (2d Cir. N.Y. 2006) ("…the FDCPA broadly defines "[t]he term

'communication' [as] the conveying of information regarding a debt directly or indirectly to any

person *through any medium*.") Defendant attempts to escape liability by asserting that they did

not send the document *directly* to the Plaintiff. Defendants assert that they sent the Income

Execution to the Sherriff so that the Sherriff could send it to the Plaintiff. This is clearly a

communication. While one could argue over whether it is a *direct* communication or an *indirect*

communication, this distinction is of no import, as the FDCPA applies to both. *Setton v. Cohen*

*Hurkin Ehrenfeld Pomerantz & Tenenbum, LLP*, 2014 U.S. Dist. LEXIS 133772 (E.D.N.Y. Sept.

22, 2014); *Wright v. Phillips & Cohen Assocs.*, 2014 U.S. Dist. LEXIS 126804, at *9 (E.D.N.Y.

Sep. 9, 2014); *Simon v. FIA Card Services, N.A.*, 732 F.3d 259, 262-63, 265-66 (3d Cir.

2013) (finding that letter and notice sent to debtors' bankruptcy counsel was "communication"

within meaning of FDCPA).

The Defendant cannot in good faith argue that the subpoena was not an attempt to

communicate with the Plaintiff when the subpoena itself includes numerous statements speaking

directly to the Plaintiff, and demanding money:

-- **Directions to Judgment Debtor**: **You** are notified and commanded
immediately to start paying to the Enforcement Officer serving a copy of this
INCOME EXECUTION on **you**: installments amounting to 10% (but no more
than the Federal limits set forth in
1. Limitations on the amount that can be withheld below) of any and all salary,
wages or other income. including any and all overtime earnings, commissions or

other irregular compensation received or hereafter to be received from **your** Employer and to continue paying such installments until the judgment with interest and the fees and expenses of this Income Execution are fully paid and satisfied and if **you** fail to do so within 20 days this Income Execution will be served upon the Employer by the Enforcement Officer.

-- Notice: **You** may be able to challenge this income execution through the procedures provided in CPLR §5231 (i) and CPLR §5240.
If **you** think that the amount of your income being deducted under this income execution exceeds the amount permitted by state or federal law, **you** should act promptly because the money will be applied to the judgment. If **you** claim that the amount of your income being deducted under his income execution exceeds the amount permitted by state or federal law, **you** should contact your employer or other person paying your, income. Further. **YOU** MAY CONSULT AN ATTORNEY. INCLUDING LEGAL AID IF YOU QUALIFY.

*See*, "Income Execution" attached as Exhibit A to Plaintiff's Complaint and Amended Complaints (emphasis added).

The fact that this document was sent to the Plaintiff through the Sheriff's office makes no difference, as the communication was directed at the Plaintiff, and the FDCPA regulates indirect communications in any case. The Second Circuit recently clarified that even documents that were <u>never</u> even sent to a consumer, but that would routinely come to the consumer's attention, are covered by the Act. *See Arias*, 875 F.3d at 137. The *Arias* decision clarified that the placement and maintaining of a restraint constitutes a violation of 15 U.S.C. § 1692e and 15 U.S.C. § 1692f of the FDCPA. *Id*. at 137. The Court clarified that the filings of documents that "routinely come to the consumer's attention and may affect his or her defense of a collection claim" constitute collection action subject to the FDCPA. *Arias*, 875 F.3d at 137, citing to *Hemmingsen v. Messerli & Kramer, P.A.*, 674 F.3d 814, 818-19 (8th Cir. 2012). Also see, *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015) ("Passing fraudulent communications through the court en route to consumers does not cleanse Defendants of liability under § 349."). In *Arias*, the Second Circuit also reiterated that the FDCPA is a remedial

consumer protection statute that should be read liberally for the protection of consumers. (Id at

134.)   In the instant matter, the language in the income execution was directed at the consumer,

and Defendant sent the document to the Sheriff to be forwarded to the Plaintiff. This is clearly a

"communication."

Whether the income execution had some additional independent aspect to it is also of no

import, as it clearly communicated information about the subject debt. The Second Circuit, in

*Romea v. Heiberger & Assocs.*, 163 F.3d 111 (2d Cir. 1998), made this clear:

> The facts surrounding an Article 7 summary proceeding prove nothing about
> whether the notice that Romea received from Heiberger was or was not a
> "communication" sent "in connection with the collection of any debt," 15 U.S.C.
> § 1692e (1994). Whatever else it was, the § 711 letter that Heiberger sent
> to Romea was undeniably a "communication" as defined by the FDCPA in that it
> conveyed "information regarding a debt" to another person, *id.* § 1692(a)(2). And
> Heiberger makes no attempt to deny that its aim in sending the letter was at least
> in part to induce Romea to pay the back rent she allegedly owed. As a result, the
> fact that the letter also served as a prerequisite to commencement of the Article 7
> process is wholly irrelevant to the requirements and applicability of the FDCPA.

*Romea,* at 116.

The Court in *Romea* also made it clear that the fact that any of the language of this

subpoena is mandated by state law is of no import as to whether it violates the FDCPA. *See*

*Romea*, 163 F.3d at 118-119; *see also*, *Nara v. Palisades Acquisition XVI, LLC*, No. CV 14-4687

(JS)(ARL), 2015 U.S. Dist. LEXIS 89024, at *8-9 (E.D.N.Y. May 11, 2015) ("Next, Defendants

argue that the Income Execution complied with the requirements set forth in the N.Y. C.P.L.R.

and was therefore valid and/or exempt from the FDCPA's requirements. Defendant's argument

is squarely foreclosed by Second Circuit case law.")

Lastly, the law is clear that attorneys, and litigation documents, are in no way exempt

from the notice requirements under the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291 (U.S. 1995);

*Romea*, 163 F.3d at 116; *Goldman*, 445 F.3d 152; and *Sykes v. Mel Harris & Assocs., LLC*

*("Sykes I")*, 757 F. Supp. 2d 413, 433 (S.D.N.Y. 2010) (drafting and filing false affidavit of service is covered under FDCPA); *Simon*, 732 F.3d 259 (post-judgment information subpoena to debtor subject to FDCPA).

### B. The Income Execution was not a formal pleading

Because the income execution here is not a "formal pleading" in any sense, it is not subject to the exception contained within 15 U.S.C. § 1692e(11). The income execution was not even presented to the Court – it was sent to the Plaintiff. No Court was being asked to consider the Defendants' "pleas" for relief. The income execution was an extra-judicial way for the Defendants to try to forcibly take the Plaintiff's money. Congress did not exempt this conduct from 15 U.S.C. § 1692e(11). Indeed, it is clear that Congress wanted this conduct to be covered by the Act. *See* 15 U.S.C. § 1692a(5); *Heintz*, 514 U.S. 291, 115 S. Ct. 1489. If Congress wanted to create an exception to 15 USC 1692e(11) for post judgment income executions they would have said so, like they did in 15 USC 1692c(b). In 15 USC 1692c(b) Congress specifically created an exception to the non-disclosure provisions of that subsection. The exception applies to "post judgment enforcement mechanisms," like income executions. If Congress wanted to carve out "post judgement enforcement mechanisms" from 1692e(11) they would have said so; they would not have used the phrase "legal pleadings."   The definition of words within a statute should be construed consistently. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 568-70, 115 S. Ct. 1061, 1066-67 (1995). Or, if Congress wanted to create an exception for any documents in any manner related to litigation, they could have said that also. But they didn't.

The most thorough analysis of this issue comes from the case of *Adams v. Schumacher*, 2014 U.S. Dist. LEXIS 170075 (D. Or. Dec. 9, 2014). Relying on the U.S. Supreme Court decision in *Heintz,* the Court in *Adams* stated:

> In contrast, a writ is a "court's written order, in the name of a state or other
> competent legal authority, commanding the addressee to do or refrain from doing
> some specified act." *Id.* at 1747. Because a writ is issued post-litigation, it cannot
> be considered a part of the litigation process itself. And there is no indication in
> the legislative record or case law (including the cases cited by the parties)
> suggesting the "legal pleading" exemption is to apply generally to any court or
> legal document. *See Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 366-67
> (D. Md. 2010) (holding that "an interrogatory is not automatically exempt . . . as a
> 'formal pleading in a civil action'" because it does not fall within any of the
> pleading categories exclusively recognized under Rule 7(a) of the Federal Rules
> of Civil Procedure ); *Lilly v. RAB Performance Recoveries, LLC*, No. 2:12-CV-
> 364, 2013 U.S. Dist. LEXIS 109369, 2013 WL 4010257, at *4-5 (E.D. Tenn.
> Aug. 25, 2013) (distinguishing between documents filed specifically as part of
> and in support of a complaint and those that are part of the discovery process,
> where the former constitutes a legal pleading and the latter does not). Extending
> the exemption to writs and similar documents would render §
> 1692g(a) inapplicable to attorney debt collectors, which the court expressly
> declined to do in *Heintz*.

*Adams*, 2014 U.S. Dist. LEXIS 170075, at *9.

A "pleading" is a request to a court. It is "[a] formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses." Bʟᴀᴄᴋ's Lᴀᴡ Dɪᴄᴛɪᴏɴᴀʀʏ (10th ed. 2014), *available at* Westlaw BLACKS . An income execution is not asking the Court for anything. The Court is not involved in the process at all. *See also Hauk*, 749 F. Supp. 2d at 367; *Rice v. Grimm Bros. Realty Co.*, 2016 U.S. Dist. LEXIS 7502, at *15-17 (E.D. Pa. Jan. 21, 2016); *Heyer v. Pierce & Assocs., P.C.*, No. 14 C 854, 2017 U.S. Dist. LEXIS 3144, at *33-36 (N.D. Ill. Jan. 9, 2017).

The Court should also consider that Federal Rule of Civil Procedure 7 provides a list of what constitutes a "pleading." *See Hauk*, 749 F. Supp. 2d at 367. Obviously, income executions are not included. Plaintiff's counsel is not aware of *any* decision that has ever ruled that an income execution is a "legal pleading."

The cases cited by the Defendants do not help their argument. None of the cases cited by the Defendant involve an extra-judicial income execution. The cases cited by Defendants all

involve documents filed with the Court during litigation. While there appears to be some
disagreement between the Courts as to which documents filed with the Court constitute a "formal
pleading," no court has every ruled that "formal pleadings" include *extra-judicial* documents,
like an income execution.

### C. There are no other exceptions to 15 U.S.C. § 1692e(11)

Income executions are not exempt from the FDCPA. The fact that 15 U.S.C. § 1692e(11)
contains a specific exception for formal pleadings, mandates that no other exceptions be read
into the statute. *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-617 (U.S. 1980) ("Where
Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions
are not to be implied, in the absence of evidence of a contrary legislative intent.")  Defendant is
effectively asking this Court to re-write § 1692e(11) to create an exception for post-judgment-
enforcement mechanisms, so as to aid them in their business endeavors. Defendants' request
should be denied.

The FDCPA specifically envisions post judgement enforcement being subject to the act.
The definitions section of the Act, 15 U.S.C. § 1692a, defines "debt" as including post
judgement enforcement mechanisms. *See Nara*, 2015 U.S. Dist. LEXIS 89024, at *8. In *Nara*,
Plaintiff complained that a post judgement income execution did not provide the notices required
by 15 1692e(11) and 15 U.S.C. § 1692g(a). Defendants in *Nara*, sought to dismiss Plaintiff's
Amended Complaint. The Court denied Defendant's arguments:

> Defendants argue that the proposed claims are futile for several reasons. First,
> Defendants argue that the Income Execution is exempt from the requirements of
> the FDCPA because it was not an attempt to collect a "debt." Instead, Defendants
> argue it was an attempt to execute a judgment. Defendants do not cite any
> authority in support of their argument that the FDCPA does not apply to post-
> judgment debt.

> Under the FDCPA, "[t]he term 'debt' means any obligation or alleged obligation
> of a consumer to pay money arising out of a transaction in which the money,
> property, insurance, or services which are the subject of the transaction are
> primarily for personal, family, or household purposes, *whether or not such
> obligation has been reduced to judgment."* 15 U.S.C. § 1692a(5) (emphasis
> added). Under the plain language of the statute, a judgment may constitute a
> debt. *See Musah v. Houslanger & Assocs., PLLC*, 962 F. Supp. 2d 636, 639-40
> (S.D.N.Y. 2013) (finding that debtor sufficiently alleged that he did not receive
> notice that judgment had been assigned, as required to state claim under FDCPA).
> Accordingly, the Court finds that Defendants' argument has no merit.

*Nara*, 2015 U.S. Dist. LEXIS 89024, at *8.

Formal pleadings are different from an income execution because formal pleadings are within the purview of the Court and the consumer's attorney. An income execution is sent to the consumer directly outside of the court's oversight to try to coerce payment. *See Carlin v. Davidson Fink LLP*, 852 F.3d 207, 214-15 (2d Cir. 2017) (letter sent directly to consumer not within protection of the court). Congress clearly saw these things differently. If Congress wanted judgment enforcement documents to be exempt from 15 U.S.C. § 1692e(11) they would have said so. They didn't however. They limited the exception to the "formal pleadings."

**VII. The Claims Based on Service of Process Are Not Time Barred**

Plaintiff alleges that she learned that there was a default judgment against her only upon receiving the income execution sometime after January 10, 2017. The Plaintiff filed this case in December 2017. The statute of limitations under the FDCPA is one year. 15 U.S.C. § 1692k. None of the Plaintiff's claims are time barred. Defendants are apparently arguing that the statute of limitations related to the claims based upon the original complaint began to run in 2005, when the default judgment was entered. This analysis however is foreclosed by Second Circuit case law. In *Benzemann v. Citibank N.A.*, 806 F.3d 98, 102-03 (2d Cir. 2015), the Court held that for the Plaintiff to bring an FDCPA case, she must first have a complete cause of action *and* notice of the FDCPA violation. The Plaintiff didn't know about the "judgment" until she received the

24

Income Execution after January 10, 2017. The statute did not start to run for any of Plaintiff's

claims until she had notice of them. *See also*, *McCrobie v. Palisades Acquisition XVI, LLC*, 664

Fed. Appx. 81, 83-84 (2d Cir. 2016) (summary order); *Gil v. Allied Interstate, LLC*, No. 2:17-cv-

3362 (ADS)(AYS), 2017 U.S. Dist. LEXIS 182824, at *8-9 (E.D.N.Y. Nov. 3, 2017).

Furthermore, the Defendants' sending Plaintiff the Income Execution is a discrete violation of

the FDCPA that did not occur until she received the document. *Benzemann*, 102-103; *Puglisi v.

Debt Recovery Sols., LLC*, No. 08-CV-5024 (JFB) (WDW), 2010 U.S. Dist. LEXIS 6120, at *8

(E.D.N.Y. Jan. 26, 2010); and *Ellis v. Gen. Revenue Corp.*, 274 F.R.D. 53, 58 (D. Conn. 2011).

**VIII. Claims Under 15 U.S.C. § 1692e and 15 U.S.C. § 1692f Are Not Mutually Exclusive**

Defendants erroneously argue that debt collectors cannot simultaneously violate 15

U.S.C. § 1692e and 15 U.S.C. § 1692f. In *Arias*, 875 F.3d at 135-36, the Second Circuit

specifically held otherwise. Defendants' actions as alleged herein were both deceptive and

unconscionable. It is both unconscionable and deceptive for a lawyer to enforce an invalid

judgment.

## Conclusion

For all the foregoing reasons, Defendants motion to dismiss should be denied.

Dated:          West Islip, New York
                April 20, 2018

                                    Respectfully submitted,

                                    /S/ JOSEPH MAURO
                                    Joseph Mauro
                                    One of Plaintiff's Attorneys

25

**Certificate of Service**

I, JOSEPH MAURO, an attorney, hereby certify that on April 20, 2018, the foregoing documents were filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

Brian L. Bromberg, Esq.

Joseph Mauro, Esq.

Anthony S. Poulin, Esq.

Joseph L. Francoeur, Esq.

Dated: New York, New York
           April 20, 2018

/s/ JOSEPH MAURO<br>Joseph Mauro

26