**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
JULIE SOMERSET, individually and on behalf
of all others similarly situated,

                        Plaintiff,

             -against-

STEPHEN EINSTEIN & ASSOCIATES, P.C.
and STEPHEN EINSTEIN,

                       Defendants.

--------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
2:17-cv-07539 (ADS)(ARL)

## <u>APPEARANCES:</u>

**Bromberg Law Office, P.C.**
*Attorneys for the Plaintiff*
26 Broadway, 21st floor
New York, NY 10004
      By:    Brian L. Blomberg, Esq., Of Counsel.

**The Law Office of Joseph Mauro, LLC**
*Attorneys for the Plaintiff*
306 McCall Avenue
West Islip, NY 11795
      By:    Joseph Mauro, Esq., Of Counsel.

**Wilson Elser**
*Attorneys for the Defendants*
150 East 42nd Street
New York, NY 10017
      By:    Joseph L Francouer, Esq., Of Counsel.

**Stephen Einstein & Associates**
*Attorneys for the Defendants*
39 Broadway, Suite 1250
New York, NY 10006
      By:    Anthony Scott Poulin, Esq., Of Counsel.

**Blank Rome LLP**
*Attorneys for the Defendants*
405 Lexington Avenue
New York, NY 10174
      By:    Hilary Felice Korman, Esq.,
                  Scott Evan Wortman, Esq., Of Counsel.

**SPATT, District Judge**:

The plaintiff Julie Somerset (the "Plaintiff") initiated this putative class action against Stephen Einstein & Associates, P.C. ("Einstein, P.C.") and Stephen Einstein ("Einstein") (collectively, the "Defendants") for damages stemming from alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C., 1692 *et seq.* ("FDCPA").

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6) to dismiss the complaint, and a motion by the Plaintiff to amend the complaint. The Defendants had adequate notice and time to respond to the proposed amended complaint (the "Amended Complaint"), and thus the Court will consider the motion to dismiss in light of the new allegations in the Amended Complaint. *See Eskenazi-McGibney v. Connetquot Cent. Sch. Dist.*, 84 F. Supp. 3d 221, 226 (E.D.N.Y. 2015) (Spatt, J.) ("Here, as the Defendants had sufficient opportunity to respond to the proposed amended complaint, the merits of the Defendants' motions to dismiss will be considered in light of the amended complaint."); *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F.Supp.3d 331, 338 (E.D.N.Y. 2014) (Spatt, J.) ("Where, as here, the Plaintiff seek[s] to amend his complaint while a motion to dismiss is pending, a court has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion to dismiss as moot to considering the merits of the motion in light of the amended complaint.").

Accordingly, the outcome of the Plaintiff's motion to amend turns on the Amended Complaint's ability to survive the Defendants' motion to dismiss. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002) (noting that "[a]n amendment to a pleading will be futile if a proposed claim could not withstand a motion pursuant to Rule 12(b)(6)"); *Lopez-Serrano v. Rockmore*, 132 F. Supp. 3d 390, 399 (E.D.N.Y. 2015) (Spatt, J.) ("If the PSAC cannot survive the motion to dismiss, then the Plaintiff's cross-motion to amend will be denied as futile.").

For the following reasons, the Court denies the Defendants' motion to dismiss and grants the Plaintiff's motion to amend.

# I. BACKGROUND

Unless otherwise stated, the following facts are drawn from the Amended Complaint, and construed in a light most favorable to the Plaintiff.

## A. THE RELEVANT FACTS

The Plaintiff is a citizen of the State of New York from whom the Defendants attempted to collect a consumer debt allegedly owed by the Plaintiff. ECF 14-2 ¶ 2. Einstein, P.C. is a professional corporation doing business in New York State, whose principal purpose is the collection of debts using the mail and telephone. *Id*. ¶ 3. Einstein is an attorney and principal of Einstein P.C. *Id.* ¶ 4.

On or about January 10, 2017, the Defendants drafted and mailed an "Income Execution" directed to the Plaintiff's employer and forwarded to the Plaintiff. *Id.* ¶ 9. The Plaintiff alleges that she received said Income Execution, and that the Income Execution was the first and only communication received by the Plaintiff from the Defendants. *Id.* ¶¶ 10–11. The Amended

Complaint alleges that the Income Execution lacks the language required by FDCPA Sections 1692e(11) and 15 USC 1692g(a). *Id.* ¶¶ 12–13.

In addition, the Amended Complaint claims that the Income Execution falsely indicated that there was a valid judgement against the Plaintiff from a company called Rushmore Recoveries X, LLC. *Id.* ¶ 14. In particular, the Income Execution sought to enforce a $1,219.61 default judgment issued by the New York State District Court for the County of Suffolk on September 16, 2005. ECF 21, Ex. B. The Plaintiff alleges that this judgment is invalid, because the Defendants obtained it without serving her. *Id.* ¶¶ 14–17. According to the Plaintiff, the Defendants employed the law firm of Mel S. Harris and Associates, who, through a process server company called SamServe, obtained the default judgment pursuant to a false affidavit of service signed by a SamServ employee. *Id.* ¶¶ 17–22. The Plaintiff also claims that no attorney meaningfully reviewed the Income Execution prior to serving it, and that the Defendants knew or should have known that the service obtained by SamServe was invalid. *Id.* ¶ 24.

On May 24, 2016, the United States District Court for the Southern District of New York approved a class action settlement vacating more than 200,000 default judgments obtained by the Mel Harris Firm and SamServe. *Sykes v. Mel Harris & Assocs., LLC*, 2016 U.S. Dist. LEXIS 74566 (S.D.N.Y. May 24, 2016). The Plaintiff alleges that the Defendants were aware of the *Sykes* case, but chose to actively pursue a default judgment emanating from the Mel Harris/SamServ operation. ECF 14-2 ¶ 19.

## B. THE PROCEDURAL BACKGROUND

On December 27, 2017, the Plaintiff commenced this action against the Defendants alleging violations of FDCPA Sections 1692e, 1692e(3), 1692e(10), 1692e(11), 1692f(1), 1692f(6)(A), 1692g(a). ECF 1. The Plaintiff seeks to bring the action on behalf of herself and a

class consisting of all consumers residing in the State of New York who, according to the Defendants' records received an income execution materially identical or substantially similar to the one she received. ECF 14-2 ¶ 26.

On March 26, 2018, the Defendants moved to dismiss the Complaint for failure to state a claim upon which relief may be granted. ECF 10.

On April 19, 2018, the Plaintiff filed a motion to vacate the September 16, 2005 default judgment against her in the New York State District Court of the County of Suffolk. ECF 21, Ex. B.

On April 20, 2018, the Plaintiff opposed the motion to dismiss and filed a motion seeking leave to amend the Complaint. ECF 14; ECF 15. The proposed Amended Complaint withdrew the Plaintiff's claims under GBL § 349.

On May 4, 2018, the Defendants filed a reply in support of their motion to dismiss. ECF 20. The Defendants limited their opposition to the Plaintiff's motion to amend to the argument that any such amendment would be futile. *Id.* at 1.

On May 30, 2018, the Plaintiff submitted a letter motion informing the Court that the New York State District Court of the County of Suffolk vacated the default judgment against her. ECF 21.

## II. DISCUSSION

### A. THE LEGAL STANDARD

It is well-established that a complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Indeed, the issue on a motion to dismiss is "not whether a plaintiff will ultimately prevail

but whether the claimant is entitled to offer evidence to support the claims." *Todd v. Exxon Corp.*, 275 F.3d 191, 198 (2d Cir.2001) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "'Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009)).

In deciding a motion to dismiss, the Court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the Plaintiff's favor. *Ashcroft*, 129 S.Ct. 1937 at 1949–50; *Zinermon v. Burch*, 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 91 (2d Cir.2007). However, "that 'tenet' 'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris*, 572 F.3d at 72 (quoting Iqbal, 129 S.Ct. at 1949). As such, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and ... determine whether they plausibly give rise to an entitlement of relief." *Iqbal*, 129 S.Ct. at 1950. Only if this Court is satisfied that "the complaint cannot state any set of facts that would entitle the plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6)." *Hertz Corp. v. City of N.Y.*, 1 F.3d 121, 125 (2d Cir.1993).

## B. As to the Plaintiff's Article III Standing.

The Defendants argue that the Plaintiff lacks the requisite Article III standing to pursue a claim, because the Amended Complaint contains no allegations of injury of fact beyond a mere violation of the FDCPA. The Defendants rely on *Spokeo, Inc. v. Robins*, in which the Supreme Court held that "plaintiffs cannot satisfy the demands of Article III by alleging a bare procedural violation" of a statute absent an allegation of some concrete harm. 136 S. Ct. 1540, 1550, 194 L.

Ed. 2d 635 (2016). The Court has previously addressed and rejected this exact argument. *See Balke v. All. One Receivables Mgmt., Inc.*, No. 16-cv-5624, 2017 WL 2634653, at *2 (E.D.N.Y. June 19, 2017) (Spatt, J.) ("[T]he Second Circuit held that § 1692e and § 1692g of the FDCPA—namely, the same provisions upon which the Plaintiff's complaint in this case is premised—indisputably 'protect an individual's concrete interests,' so that an alleged violation of those provisions satisfies the injury-in-fact requirement of Article III." (quoting *Papetti v. Does 1-25*, 691 F. App'x 24, 25–26 (2d Cir. 2017)). The Court finds no reason to depart from its prior decision, and accordingly denies the Defendants' motion to dismiss with regard to standing.

## C. AS TO WHETHER THE PLAINTIFF ALLEGED MATERIAL MISREPRESENTATIONS UNDER SECTION 1692E.

Although the Second Circuit has not formally read a materiality requirement into § 1692e, it recognized in an unpublished opinion that "courts have generally held that violations grounded in 'false representations' must rest on material misrepresentations." *See Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 Fed.Appx. 89, 94 (2d Cir.2012). "While *Gabriele* is not binding precedent, the Court agrees that only material misrepresentations are actionable under the FDCPA." *Fritz v. Resurgent Capital Servs.*, LP, 955 F.Supp.2d 163, 170 (E.D.N.Y.2013). "Statements are material if they influence a consumer's decision to pay a debt or if they would impair the consumer's ability to challenge the debt." *Lautman v. 2800 Coyle St. Owners Corp.*, No. 14-cv-1868, 2014 WL 4843947, at *11 (E.D.N.Y. Sept. 26, 2014) (quoting *Hasbrouck v. Arrow Fin. Servs. LLC*, No. 09–cv–748, 2011 WL 1899250, at *4 (N.D.N.Y. May 19, 2011)).

The Defendants argue that the Plaintiff cannot establish that the Defendants' conduct caused her any confusion about the validity or amount of the debt or otherwise impeded her ability to pay or challenge it. The Court disagrees. The Defendants' argument hinges on their false characterization that the "entire basis" of the Plaintiff's claim is that the Income Execution failed

to disclose that it was a communication from a debt collector in relation to the collection of a debt. ECF 11 at 8. That is *a* component of the Plaintiff's claim, but not the entirety of it.

The gravamen of the Plaintiff's allegations is that the Defendants sent the Income Execution knowing full well the invalidity of the judgment they sought to enforce. Without providing any explanation of the underlying debt, or background regarding the judgment creditors, the Income Execution mandates the garnishment of wages to collect the judgment. Further, the Amended Complaint alleges that the Income Execution made no reference to the issues relating to the Mel Harris firm and SamServe, even though the Defendants possessed actual or constructive knowledge of those agents' pervasive use of sewer service to secure default judgments. Considering that the Plaintiff received this document under the authority of the Sherriff's department, it is only logical that a consumer under such circumstances might feel compelled to pay the debt or misunderstand their potential rights to challenge the debt. Therefore, the Court cannot say that the alleged misrepresentations "were not misleading or deceptive as to the nature or legal status of [the Plaintiff's] debt" or that they would not "have prevented the least sophisticated consumer from responding to or disputing the action." *Gabriele*, 503 F. App'x at 95–96.

As for the Defendants' contention that the Income Execution's failure to disclose that the communication came from a debt collector is immaterial, the Court agrees with other courts in this circuit which have found failure to make disclosures required by Section 1692e(11) "actionable *per se*, without any requirement of materiality." *Massey v. On-Site Manager, Inc.*, 285 F.R.D. 239, 248 (E.D.N.Y. 2012); *see also Kagan v. Selene Fin. L.P.*, 210 F. Supp. 3d 535, 548 (S.D.N.Y. 2016) ("§ 1692e(11) requires that a debt collector identify itself as such in all communications. . . . Where, as here, the debt collector failed to divulge that precise information, such an omission is

material to whether an unsophisticated consumer would be confused about whether the caller was a debt collector.").

Therefore, the Court denies the Defendants' motion to dismiss for failure to plead materiality.

## D. As to Whether the Income Execution Was the "Initial Communication" with the Plaintiff.

The Defendants urge the Court to dismiss the Plaintiff's claims under Sections 1692e(11) and 1692g(a) , because their "initial communication" was an October 7, 2015 Letter not mentioned in the Amended Complaint, and not the Income Execution. According to the Defendants, the disclosure requirements set out in these provisions apply only to the debt collector's "initial communication" with a consumer, which they believe the October 7, 2015 Letter satisfied. Therefore, the Defendants argue that the Income Execution, as a "subsequent communication," complies with the statute. The Court finds that the October 7, 2015 letter falls outside the proper scope of the Court's consideration at the pleading stage, and thus denies the Defendants' motion in this regard.

"Federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 216 (E.D.N.Y. 2018) (Spatt, J.); *see also Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (noting that the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint"). In exercising its discretion, the Court may consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public

disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting *In re Merrill Lynch & Co.*, 273 F.Supp.2d 351, 356–57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006)).

The Defendants assert that the Court should consider the October 7, 2015 Letter because it is integral to the claims in the Amended Complaint. The Court disagrees. "To be 'integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint.'" *Luna v. N. Babylon Teacher's Org.*, 11 F. Supp. 3d 396, 402 (E.D.N.Y. 2014) (Spatt, J.) (quoting *DeLuca v. AccessIT Grp., Inc.*, 695 F.Supp.2d 54, 60 (S.D.N.Y.2010)); *see also Lohan v. Perez*, 924 F. Supp. 2d 447, 453 (E.D.N.Y. 2013) (describing a document as "integral to the complaint" where "it is a document upon which the complaint solely relies . . . or where the complaint relies heavily upon its terms and effects").

In the case pointed to by the Defendants, the plaintiffs based certain allegations in the complaint on the documents at issue, but nonetheless failed to reference or attach those documents. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (considering stock purchase agreement, offering memorandum, and warrant in securities fraud case).

Here, the Amended Complaint alleges that the Income Execution was the first and only communication the Plaintiff ever received from the Defendants. In addition, the Defendants provide no indication that the Plaintiff in fact received the October 7, 2015 letter beyond their assertion that they mailed it. As a result, it cannot be said that the Plaintiff had actual notice of the

October 7, 2015 letter, let alone relied on it in framing the Amended Complaint. *See Setton v. Cohen Hurkin Ehrenfeld Pomerantz & Tenenbum, LLP*, No. 12-cv-4102, 2014 WL 4724704, at *6 (E.D.N.Y. Sept. 22, 2014) (declining to consider a notice attached to the motion to dismiss because the complaint alleged plaintiff never received such notice).

Therefore, the Court finds that the Income Execution was the "initial communication" with the Plaintiff. It need not decide whether the Income Execution would comply with the FDCPA as a "subsequent communication." The Court denies the motion to dismiss in this regard.

**E.  AS TO WHETHER SECTION 1692E(11) APPLIES TO INCOME EXECUTIONS.**

**1.  As to Whether the Income Execution Is A Communication "with a consumer."**

In relevant part, Section 1692e(11) attaches liability to "failure[s] to disclose in the initial written communication with the consumer." The Defendants argue that this provision cannot apply to the Income Execution, because it was a communication with the Sherriff, rather than a communication with a consumer. Although the Defendants' argument has some intuitive appeal, it is inconsistent with this Circuit's law construing the FDCPA.

"The FDCPA does not offer a definition of 'initial communication.'" *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017). Nor does the statute or its case law provide much clarity regarding the requirement that the communication be "with" a consumer. *Cf. id.* at 214 ("The statute specifies that the communication must be 'with' a consumer. We cannot discern from this alone whether the statute should be read to exclude communications initiated by the consumer."). The FDCPA does, however, define "'communication' very broadly as 'the conveying of information regarding a debt directly or indirectly to any person through any medium.'" *Romea v. Heiberger & Assocs.*, 163 F.3d 111, 113 n. 2 (2d Cir.1998). Further, "[w]hile the Second Circuit has not precisely defined the scope of the term 'communication,' it has suggested in other contexts

11

that, consistent with Congress's intent in enacting the FDCPA, the statute should be broadly construed." *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 655 (S.D.N.Y. 2006) (citing *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989)); *see also Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F.Supp. 1148, 1153 (E.D.N.Y. 1996) ("The Second Circuit also has warned debt collectors against loosely interpreting the FDCPA.").

With these principles in mind, the Court finds the Income Execution is the sort of communication covered by Section 1692e(11). The Defendants drafted the Income Execution and provided it to the Sheriff with the express purpose of transmitting the document to the Plaintiff. The fact that the Sherriff's office attached a cover letter with its own letterhead and signature when delivering the document does not alter what appears to be the Income Execution's express purpose, namely, conveying information about the underlying judgment to the Plaintiff's employer (and thus the Plaintiff) in order to collect upon the judgment. If the Income Execution in fact was the first communication the Plaintiff received regarding the judgment, as the Amended Complaint alleges, then requiring the disclosures mandated by Section 1692e(11) would certainly advance the goals of the statute. *See Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016) (explaining that Courts must construe the FDCPA "in liberal fashion to achieve the underlying Congressional purpose" to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses"). For similar reasons, courts recognize that, in certain circumstances, communications with a third party may be actionable under the statute. *Baltazar v. Houslanger & Assocs.*, PLLC, No. 16-cv-4982, 2018 WL 3941943, at *16–17 (E.D.N.Y. Aug. 16, 2018)

(collecting cases), *report and recommendation adopted*, 2018 WL 4781143 (E.D.N.Y. Sept. 30, 2018).

Consequently, the Court finds persuasive the cases cited by the Plaintiff regarding communications to a debtor's attorney, even if they are not totally analogous. They establish that documents sent "indirectly" through the "medium" of a debtor's attorney "fall[] comfortably within" the definition of communication because, in those cases, the debt collector "interpose[s] the attorney as an intermediary between a debt collector and a consumer." *Setton*, 2014 WL 4724704, at *4 (collecting cases); *Wright v. Phillips & Cohen Assocs., Ltd.*, No. 12-cv-4281, 2014 WL 4471396, at *4 (E.D.N.Y. Sept. 10, 2014) (finding that a letter constituted "the initial communication with a consumer" where it arrived at the address of the plaintiff's lawyer, but it was "clear that the information it contained was designed to be conveyed, albeit 'indirectly,' to Plaintiff."). Similarly, the Defendants interposed the Sherriff's department as an intermediary between themselves and the Plaintiff in order to enforce the default judgment.

The case of *Nara v. Palisades Acquisition XVI, LLC*, No. 14-cv-4687, 2015 WL 4064572 (E.D.N.Y. May 11, 2015), in which United States Magistrate Judge Lindsay permitted a plaintiff to amend their complaint to include a Section 1692e(11) claim relating to an income execution, also weighs heavily in the Plaintiff's favor. Although Judge Lindsay did not specifically address whether the income execution at issue constituted an "initial communication" under the FDCPA, she rejected the argument that the income execution escaped the statute's requirements due to its compliance with the requirements set forth in the New York CPLR. *Id.* at *4. In the Court's view, this conclusion is equally applicable to the Defendants' contention that the Income Execution falls out of the FDCPA's reach simply because the Sherriff's office served it on its own letterhead.

The cases cited by the Defendants, on the other hand, are less persuasive, as they rely on non-binding precedent from other circuits which depart from this jurisdiction's case law. *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938 (7th Cir. 2011) adopted a *per se* rule precluding claims based on "communications that would confuse or mislead a state court judge" *Id.* at 844. While the Second Circuit has not expressly addressed this question, the Seventh Circuit's stance apparently is contrary to the greater weight of authority of district courts within this Circuit. *See Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 290 n.9 (S.D.N.Y. 2012); *Toohey v. Portfolio Recovery Assocs., LLC*, No. 15-cv-8098, 2016 WL 4473016, at *7–8 n.11 (S.D.N.Y. Aug. 22, 2016).

The remaining cases cited by the Defendants relate to the exception for formal pleadings made in connection with a legal action. *See Zevgolis v. Greenberg Law Firm, P.C.*, No. 10-cv-625, 2011 WL 251024, at *3–4 (E.D. Va. Jan. 26, 2011); *In re Revere*, No. 07-1006, 2007 WL 4879279, at *1 (Bankr. N.D. Ind. Oct. 22, 2007). As the Court will explain in the following section, these cases depart from the Second Circuit's treatment of the exception.

### 2. As to Whether the Income Execution Is A "Formal Pleading."

Section 1692e(11) provides that "this paragraph shall not apply to a formal pleading made in connection with a legal action." This "broad exclusion" applies not only to "the formal documents that make up a standard pleading," but also to "any communication forming any part" thereof, including "exhibits attached to a complaint," *Carlin*, 852 F.3d at 213, as well as "documents that state law mandates a plaintiff to file shortly thereafter, and in relation to that pleading, to complete the initiation of the case." *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 88 (2d Cir. 2018). The Defendants contend that this exception applies to the Income Execution, because income executions are a legal process to enforce a judgment. Although this is

a close question, the Court finds the Income Execution is not a formal pleading exempt from Section 1692e(11).

Both parties cite on point cases from outside this Circuit reaching opposite conclusions regarding whether the formal pleading exception covers the Income Execution. *Compare Zevgolis*, 2011 WL 251024, at *3–4 (finding post-judgment summons from the Court clerk exempt from Section 1692e(11)) *and Albanese v. Portnoff Law Associates, Ltd.*, 301 F. Supp. 2d 389, 402 (E.D. Pa. 2004) (finding a praecipe for writ of execution beyond the scope of Section 1692e(11))*, with Adams v. David B. Schumacher, PC*, No. 13-cv-2301, 2014 WL 6977695, at *4 (D. Or. Dec. 9, 2014) (finding writ of garnishment covered by Section 1692e(11)) *and Rice v. Grimm Bros. Realty Co.,* No. 15-cv-1405, 2016 WL 279529, at *5–6 (E.D. Pa. Jan. 21, 2016) (finding writ of execution covered by Section 1692e(11)).

The rationale underlying each line of cases is compelling. On the one hand, the Court is hesitant to subject communications to the FDCPA when the debt collector is not the one conveying the message and has no control over the form of the message. *Zevgolis*, 2011 WL 251024, *3. In addition, the Court agrees that it is counterintuitive that the FDCPA would exempt debt collectors from disclosures in their initial interaction with a debtor via an initial pleading but require disclosures in subsequent court filings. *See Stephens v. Manley Deas Kochalski, LLC*, No. 17-cv-2470, 2017 WL 5454458, at *5–6 (E.D. Pa. Nov. 14, 2017). On the other hand, the term "formal pleading" has a specific meaning, one which Congress was certainly aware of when revising the statute. If Congress intended a broader exemption, covering all court filings and not just pleadings, it certainly would have chosen different language. *See Adams*, 2014 WL 6977695, at *4.

Ultimately, the Court finds the latter explanation to be persuasive. "When construing a statute, [the Court must] begin with its language and proceed under the assumption that the

statutory language, unless otherwise defined, carries its plain meaning...." *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 76 (2d Cir. 2015). Both the federal and New York rules of civil procedure expressly limit pleadings to an enumerated set of documents at the opening stage of the lawsuit, such as the complaint and the answer. *See* Rule 7(a) ("Only these pleadings are allowed. . ."); N.Y. C.P.L.R. 3011 ("There shall be no other pleading unless the court orders otherwise."). Notwithstanding the potential anomalous results this conclusion requires, nothing in the statute, its legislative history, or Second Circuit case law construing the statute hints that Congress intended the exemption extend beyond this traditional understanding of a pleading. Indeed, despite characterizing the exclusion as "broad," the Second Circuit nonetheless limited it to documents attached or related to filings necessary to complete the initiation of the case. *See Carlin*, 852 F.3d at 213; *Cohen*, 897 F.3d at 87–88. Until it receives further guidance from the Second Circuit, the Court is not free to depart from the clear language of the statute.

Further, the Court does not believe that this holding will be of much import on most court cases involving debtors and debt collectors. Although court filings after the pleadings may theoretically fall under the ambit of Section 1692e(11), they only trigger the provision's disclosure requirements if they are the debt collector's first communication with the debtor, that is, the debt collector never properly served their pleading on the debtor. In these circumstances, the fact that the debt collector does not control the form of the document seems less important, considering the statute's protections will only apply due to the debt initial failure to effect service.

Therefore, the Court denies the Defendants' motion to dismiss with regard to the Defendants' contention that the Income Execution is not a communication under Section 1692e(11).

**F.  AS TO WHETHER THE PLAINTIFF STATES A CLAIM UNDER SECTIONS 1692E(2), 1692E(3), 1692E(4), 1692E(5), 1692E(10) 1692F(1) AND 1692F(6).**

The Defendants argue that the Plaintiff fails to state a claim because she was not a member of the classes obtaining vacations of the Mel Harris default judgments in *Sykes v. Mel S. Harris & Assoc. LLC*, 780 F.3d 70, 75 (2d Cir. 2015). The Defendants assert that, because the default judgment against the Plaintiff is owed to Rushmore Recoveries X, a wholly separate and distinct entity from the defendants in the *Sykes* action, the debt at issue is valid, and thus there is no false or misleading information contained in the Income Execution. In further support of this argument, the Defendants point to the fact that, at the time of filing the initial complaint, the Plaintiff had neither sought nor obtained vacation of the judgment against her. Again, the Court disagrees.

The Amended Complaint alleges that the Defendants obtained the default judgment against her using the Mel Harris firm, SamServe, and Todd Fabacher – the exact law firm, process service company, and process server targeted by the *Sykes* action. In *Sykes*, the plaintiffs alleged, and submitted evidence in support of those allegations, that these exact actors obtained fraudulent default judgments against over 200,000 defendants through widespread use of "sewer" service. *See Sykes*, 285 F.R.D at 285. Based on these allegations, the plaintiffs obtained mass vacatur of those judgments before the Defendants submitted the Income Execution. The Plaintiff claims that, given the outcome of the *Sykes* action, the Defendants knew or should have known that the default judgment obtained using these agents was fraudulent.

The Defendants' sole defense in this regard, that because *Sykes* related to a different creditor and thus cannot apply to their judgment against the Plaintiff, is unavailing. The Plaintiff bases her claim on the agents who effected service in the *Sykes* action, not the defendants. While the Plaintiff may be ultimately unable to prove that the Defendants in fact possessed such knowledge, the Amended Complaint certainly alleges that the Defendants made a knowing

misrepresentation by submitting the Income Execution notwithstanding their actual or constructive knowledge that it was improperly obtained using sewer service. *See Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 423 n.9 (S.D.N.Y. 2010) (denying motion to dismiss where plaintiffs "pled facts that, if proven, show that the Mel Harris and Leucadia defendants knew Samserv's affidavits of service were 'highly likely to be false'").

The Defendants cannot escape this reality simply because the default judgment had not been vacated at the time the Plaintiff filed the complaint, because the relevant issue is not simply the validity of the judgment itself, but rather the Defendants knowledge about the validity of the judgment. *See Sanchez v. Abderrahman*, No. 10-cv-3641, 2012 WL 1077842, at *11–12 (E.D.N.Y. Mar. 30, 2012) (denying motion to dismiss where state court had not yet vacated a default judgment allegedly obtained via sewer service) *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10-cv-3920, 2012 WL 661456, at *12 (E.D.N.Y. Feb. 28, 2012) (denying motion to dismiss where plaintiff alleges defendant knowingly filed a time-barred claim in state court), *report and recommendation adopted*, No. 10-cv-3920, 2012 WL 1882976 (E.D.N.Y. May 24, 2012).

The Defendants' arguments similarly fall short in the context of the Section 1692e(3) claims. The Plaintiff alleges that the Defendants robosigned the Income Execution, and that meaningful review of the underlying judgment would have revealed their reliance on sewer service in light of the agents used to obtain the default judgment. The Second Circuit permits claims under Setion 1692e(3) for allegations that debt collectors sent documents on behalf of an attorney without meaningful attorney involvement. *See Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 304 (2d Cir. 2003). Courts have generally allowed claims to proceed past the pleading stage under this theory when the plaintiffs allege that the defendant sought to enforce a judgment without first reviewing the underlying judgment. *See Musah v. Houslanger & Assocs., PLLC*, 962 F. Supp. 2d

636, 640–41 (S.D.N.Y. 2013) (denying motion to dismiss based on attempt to enforce judgment without reviewing case file to determine if party had notice of the assignment); *Baltazar*, 2018 WL 3941943, at *16–17.

Therefore, the Court denies the Defendants' motion to dismiss with regard to the Plaintiff's claims under Sections 1692e(2), 1692e(3), 1692e(4), 1692e(5), 1692e(10) 1692f(1) AND 1692f(6).

## G. As to Whether the Statute of Limitations Bars the Plaintiff's Claims.

The Defendants claim that the statute of limitations bars the Plaintiff's claims, because the default judgment underlying the Income Execution occurred on September 16, 2005. This argument lacks merit. Under the FDCPA, plaintiffs must commence an action a claim must be commenced "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). In *Benzemann v. Citibank N.A.*, the Second Circuit held that an FDCPA violation only occurs when a plaintiff has both a complete cause of action and notice of the FDCPA violation. 806 F.3d 98, 102–03 (2d Cir. 2015). Here, the Plaintiff's claim accrued upon receipt of the Income Execution. *See McCrobie v. Palisades Acquisition XVI, LLC*, 664 F. App'x 81, 83 (2d Cir. 2016) ("The district court correctly concluded that the earliest possible accrual date of the FDCPA claims at issue here was August 28, 2014, when the Houslanger firm issued the income execution."); *cf. Gil v. Allied Interstate, LLC*, No. 17-cv-3362, 2017 WL 5135600, at *4 (E.D.N.Y. Nov. 3, 2017) ("Therefore, this Court holds, consistent with a number of district courts in this Circuit, that the one-year statute of limitations period for an FDCPA violation begins to run on the date that the consumer receives the debt collection letter.") (collecting cases). Therefore, the Court denies the motion to dismiss in this regard.

**H. As to Whether the Court Must Dismiss the 1692f Claims As Duplicative.**

The Defendants argue that the Plaintiff cannot assert a violation of Section 1692f based on the same conduct underlying Section 1692e claims. The Second Circuit has expressly rejected the argument that "sections 1692e and 1692f are mutually exclusive and that the same conduct by a debt collector cannot violate both sections at once." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135–36 (2d Cir. 2017). The cases drawn by the Defendants all predate this on point authority from the Second Circuit. Therefore, the Court denies the motion to dismiss based on alleged duplicative claims.

## III.  CONCLUSION

For the foregoing reasons, the Court denies the Defendants' motion to dismiss and grants the Plaintiff's motion to amend the Complaint. The Plaintiff is directed to file the Amended Complaint no later than ten days from the issuance of this order.


It is **SO ORDERED**:

Dated:  Central Islip, New York

  January 4, 2019

  ____/s/ Arthur D. Spatt__

  ARTHUR D. SPATT

  United States District Judge